Andrew F. Sears, # 7-4557
Bennett L. Smith, # 8-7450
Sundahl, Powers, Kapp & Martin, LLC
500 W. 18th Street, Suite 200
P.O. Box 328
Cheyenne, WY 82003-0328
Telephone: (307) 632-6421
Facsimile: (307) 632-7216
asears@spkm.org
bsmith@spkm.org
*Attorneys for Plaintiffs*



**FILED**

*12:07 pm, 12/31/25*

**Margaret Botkins
Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY, ) <br> A New Hampshire Mutual Insurance Company, ) <br> THE OHIO CASUALTY INSURANCE ) <br> COMPANY, A New Hampshire Mutual Insurance ) <br> Company, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> ABSOLUTE FOAM INSULATION SYSTEM, ) <br> INC., an Idaho Corporation; MATAROZZI ) <br> PELSINGER BUILDERS, INC., a California ) <br> Corporation; JEFFREY SAFCHIK, a Wyoming ) <br> Resident, and WENDY SAFCHIK, a Wyoming ) <br> Resident, ) <br> ) <br> Defendants. ) | Civil Action No. 25-CV-302-SWS |

## COMPLAINT

**COMES NOW** the Plaintiffs, Ohio Security Insurance Company ("OSIC") and The Ohio Casualty Insurance Company ("OCIC"), by and through its undersigned attorneys, and for their Complaint against the Defendants, do hereby state and allege as follows:

A. PARTIES, JURISDICTION AND VENUE

1. OSIC is a mutual insurance company, organized and existing under the laws of New Hampshire with its principal place of business in Massachusetts.

2. OCIC is a mutual insurance company, organized and existing under the laws of New Hampshire with its principal place of business in Massachusetts.

3. On information and belief, Defendant Absolute Foam Insulation Systems, Inc. ("Absolute") is a corporation organized under the laws of Idaho with its principal place of business in Idaho.

4. On information and belief, Defendant Matarozzi Pelsinger Builders, Inc. ("MatPel") is a corporation organized under the laws of California with its principal place of business in California.

5. On information and belief Defendant Jeffrey Safchik is a citizen of Wyoming.

6. On information and belief Defendant Wendy Safchik is a citizen of Wyoming.

7. This Court has subject matter jurisdiction over this action due to diversity of the parties pursuant to 22 U.S.C. § 1332.

8. This Court has specific personal jurisdiction over Defendants Absolute and MatPel because they each performed work on the Safchiks' home in Teton County, Wyoming – such work constituting the risk purportedly insured by OSIC.

9. This Court has general personal jurisdiction over Defendants Mr. and Mrs. Safchik because they are domiciled in the State of Wyoming.

10. OSIC seeks a declaration of the coverages, exclusions, and conditions set forth in Policy number BKS (22) 56 23 10 28 (the "Liability Policy") issued by Plaintiff to Defendant Absolute. A true, accurate, and complete copy of the Policy is attached hereto as *Exhibit 1*.

11. OCIC seeks a declaration of the coverages, exclusions, and conditions set forth in Policy number USO (22) 56 23 10 28 (the "Umbrella Policy") issued by Plaintiff to Defendant Absolute. A true, accurate, and complete copy of the Policy is attached hereto as *Exhibit 2*

12. Venue is therefore appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to OSIC's claims have occurred in Wyoming and a substantial part of the property that is the subject of this action is situated in Wyoming.

### B. STATEMENT OF RELEVANT FACTS

13. Plaintiffs reallege each of the facts set forth in paragraphs 1 through 12 of this Complaint, and incorporates those facts as though fully set forth herein.

14. On information and belief, MatPel and the Safchiks entered into a contract on May 27, 2019, whereby MatPel agreed to construct a residence for the Safchiks in Teton County, Wyoming.

15. On information and belief, MatPel entered into a contract with Absolute on September 4, 2019, whereby Absolute agreed to install, construct, and perform insulation work on the residence to be constructed for the Safchiks.

16. Pursuant to the contract between MatPel and Absolute, Absolute agreed to retain commercial general liability insurance with limits of $1,000,00.00 per occurrence.

17. Pursuant to the contract between MatPel and Absolute, Absolute agreed to procure an endorsement making MatPel an additional insured on its commercial general liability policy.

18. Absolute procured the necessary endorsements making MatPel an additional insured on its commercial general liability policy. *See Exhibit 1 at SPKM-AF 000226*.

19. On information and belief, the Safchiks received a certificate of occupancy for their residence on September 9, 2021, after MatPel and Absolute had completed their work.

20. On information and belief, the Safchiks noticed warping and cupping on the exterior soffits of their home in January of 2022.

21. On information and belief, the Safchiks notified MatPel and Absolute of this damage.

22. On information and belief, further investigation by MatPel and Absolute revealed that the damaged soffits were the result of defectively installed insulation.

23. On information and belief, the MatPel and Absolute agreed to repair damage identified by the Safchiks in January of 2022.

24. On information and belief, the Safchiks noticed further soffit damage in February of 2024.

25. On information and belief, the Safchiks and MatPel determined that the soffit damage was caused by Absolute's defective installation of insulation in the home.

26. The Safchiks have filed a lawsuit against MatPel, Absolute, and MatPel's insurer, Scottsdale Insurance Company, in the United States District Court for the Northern District of California, Case No. 3:25-cv-08468-AGT. A copy of the Safchiks' complaint is attached hereto as *Exhibit 3*.

27. In their complaint, the Safchiks allege that all insulation installed by Absolute in the interstitial space above the ceiling but below the roof was defectively installed resulting in damage to the soffits.

28. In their complaint, the Safchiks further allege that MatPel failed to properly supervise Absolute and ensure that Absolute perform its work in a good and workmanlike manner.

29. OSIC is defending both MatPel and Absolute in the lawsuit filed by the Safchiks subject to reservation of its rights.

**The Commercial General Liability Policy**

30. From August 8, 2021 to August 8, 2022, OSIC provided commercial general liability coverage to Absolute through Policy No. BKS (22) 56 23 10 28.

31. MatPel is expressly an additional insured on Absolute's OSIC Policy by virtue of an "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement (Form CG 20 10 04 13). *See Exhibit 1 at SPKM-AF 000226-27*.

32. MatPel is also an additional insured on the Liability Policy by virtue of the Liability Policy's "Blanket Additional Insured Contractors – Products/Completed Operations" endorsement (Form CG 85 83 04 13).

33. The Liability Policy contains the following insuring clause:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ….
>   * * * * *
>   **b.** This insurance applies to "bodily injury and "property damage" only if:
>      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>      **(2)** The "bodily injury" or "property damage" occurs during the policy period.
>   * * * * *
> * * * * *

*Exhibit 1 at SPKM-AF000318*.

34. The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially same harmful conditions." *Exhibit 1 at SPKM-AF 000333*.

35. Pursuant to Wyoming law, the phrase "legally obligated to pay as damages," as set forth in the commercial general liability insuring clause, covers liability sounding in tort, but not liability arising from the breach of a contract or negligent performance of contractual duties. *Action Ads v. Great Am. Ins. Co.*, 685 P.2d 42, 44 (Wyo. 1984); *First Wyo. Bank, N.A. v. Continental Ins. Co.*, 860 P.2d 1094, 1099-1100 (Wyo. 1993).

36. The Safchiks' claims against MatPel and Absolute are premised on the Defendants failure to properly perform obligations created by contract.

37. The Safchiks therefore do not allege any claim against MatPel or Absolute on which they could recover any sums that either Defendant would be "legally obligated to pay as damages."

38. Moreover, the Safchiks allege only damages that are the natural result of negligent and unworkmanlike construction.

39. Defendants' allegedly negligent and unworkmanlike construction do not constitute an occurrence as a matter of law. *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1174-75 (10th Cir. 2010).

40. Moreover, the coverage set forth in the Liability Policy only applies to property damage that occurs during the policy period. *Exhibit 1 at SPKM-AF 000318*.

41. The Liability Policy expired on August 8, 2022.

42. The Safchiks allege damages occurring in February of 2024 – 18 months after the Liability Policy expired.

43. The Liability Policy's insuring clause does not provide any coverage for damages occurring after August 8, 2022.

44. The Liability Policy also contains the following exclusion for damage to property caused by the insured:

> **2.** **Exclusions**
> This insurance does not apply to:
> * * * * *
> **j.** **Damage to Property**
> "Property damage" to:
> * * * * *
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> **(6)** That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
> * * * * *
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*Exhibit 1 at SPKM-AF 000322*.

45. The Liability Policy defines "your work" as:

> **22.** "Your work":
> **a.** Means:
> **(1)** Work or operations performed by you or on your behalf; and
> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
> **b.** Includes:
> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
> **(2)** The providing of or failure to provide warnings or instructions.

*Exhibit 1 at SPKM-AF 000334*.

46. The Liability Policy defines the "products-completed operations hazard" as:

> **16.** "Products-completed operations hazard":
> **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> **(1)** Products that are still in your physical possession; or

  **(2)** work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
   **(a)** When all of the work called for in your contract has been completed.
   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
   **(c)** When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project.
  Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete will be treated as completed.

 **b.** Does not include "bodily injury" or "property damage" arising out of:
  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
  **(2)** the existence of tools, uninstalled equipment or abandoned or unused materials; or
  **(3)** Products or operations for which the classification, listed in the Declarations or the policy Schedule, states that products-completed operations are subject to General Aggregate Limit.

*Exhibit 1 at SPKM-AF 000333.*

47. Absolute performed insulation installation work above the soffits of the Safchiks home and in the interstitial space of the home.

48. The Safchiks allege that Absolute's work caused damage to the soffit insulation and the insulation installed in the interstitial space of the home.

49. The alleged damage to the soffit insulation and the insulation installed in the interstitial space of the home is excluded by the Policy's damage to property exclusion.

50. MatPel performed supervisory and general contracting work over the construction of the entirety of the Safchiks' home.

51. The Safchiks allege that MatPel failed to perform its supervisory and general contracting duties in a manner that caused damage to their home.

52. The alleged damages to the Safchiks' home caused by MatPel's failure to perform its supervisory and general contracting duties are excluded by the Liability Policy's damage to property exclusion.

53. The Liability Policy also contains the following exclusion for damage to an insured's work:

> **2. Exclusions**
> This insurance does not apply to:
> * * * * *
> **l. Damage To Your Work**
> "Property damage" to "your work" arising of out it or any part of it and included in the "products-completed operation hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*Exhibit 1 at SPKM-AF 000322.*

54. The Safchiks allege damage to the insulation work performed directly by Absolute.

55. The damage to Absolute's insulation work is excluded from coverage by the Liability Policy's damage to your work exclusion.

56. The Liability Policy contains a separate exclusion for damage to work performed by an additional insured:

> **C.** With respect to the insurance afforded by this endorsement, exclusion **l. Damage To Your Work** of Paragraph **2. Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
> **l. Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

*Exhibit 1 at SPKM-AF 000360.*

57. MatPel's work on the Safchiks' home included the task of ensuring that subcontractors retained by MatPel performed their work in accordance with the project's plans and in a good and workmanlike manner.

58. The Safchiks allege damage to their home arising out of MatPel's failure to properly supervise Absolute and ensure that it performed its work in accordance with the project's plans and in a good and workmanlike manner.

59. The damage to the Safchiks' home allegedly caused by MatPel's failure to properly supervise Absolute is excluded from coverage by the blanket additional insured endorsement's damage to your work exclusion.

60. The "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement contains the following additional exclusion:

> **B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
> This insurance does not apply to "bodily injury" or "property damage" occurring after:
> 1. All work, including materials, parts, or equipment, furnished in connection with such work, on the project (other than service, maintenance, or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
> 2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*Exhibit 1 at SPKM-AF 000339.*

61. On information and belief, MatPel completed its work on the Safchiks' home on or before September 9, 2021.

62. On information and belief, the Safchiks home was put to use as a private residence on or around September 9, 2021.

63. On information and belief, the Safchiks first noticed damage to their soffits in January of 2022 – four months after the certificate of occupancy was issued for their home.

64. The first damages noticed by the Safchiks occurred after MatPel had completed work on their home and after the Safchiks had put the home to its intended use.

65. The damages alleged by the Safchiks are therefore excluded by the exclusion set forth in the "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement.

**The Umbrella Policy**

66. From August 8, 2021 to August 8, 2022, OCIC provided umbrella coverage to Absolute through Policy No. USO (22) 56 23 10 28.

67. MatPel is an additional insured under the Umbrella Policy by virtue of the following definition of an "insured:"

> **F.** "Insured" means each of the following, to the extent set forth:
> \* \* \* \* \*
> **5.** Any person or organization who qualifies as an insured in the "underlying insurance" and does not qualify as an "Insured" in paragraphs **1., 2., 3., 4., 6., 7.,** or **8.** of this definition **F.,** but not beyond the extent of any limitation imposed under any contract or agreement. However:
>    **a.** The coverage provided to such person or organization by this insurance:
>       **(1)** Applies only to the extent permitted by law; and
>       **(2)** Will not be broader than the coverage afforded by the applicable "underlying insurance"; and
>    **b.** If coverage provided to such person or organization is required by a contract or agreement, the limits of insurance afforded to that person or organization will be:
>       **(1)** The difference between the applicable "underlying insurance" limits and the minimum limits of insurance which you agreed to provide in a contract or agreement; or
>       **(2)** The amount of insurance available under the applicable Limits of Insurance shown in the Declarations of this policy

> Whichever is less
> \* \* \* \* \*

*Exhibit 2 at SPKM-AF 000509.*

68. The Umbrella Policy contains the following insuring clause:

**I.  COVERAGE**
**A.**  We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the **INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION II. DEFENSE**.
**B.**  This insurance applies to:
  **1.**  "Bodily injury" or "property damage" only if:
    **a.**  The "bodily injury" or "property damage" occurs during the Policy Period; and
    **b.**  The "bodily injury" or "property damage" is caused by an "occurrence" happening anywhere; and
\* \* \* \* \*

*Exhibit 2 at SPKM-AF 000504.*

69. The Safchiks allege only damages that are the natural result of negligent and unworkmanlike construction.

70. The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." *Exhibit 2 at SPKM-AF 000507.*

71. Absolute and MatPel's allegedly negligent and unworkmanlike construction do not constitute an occurrence as a matter of law. *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1174-75 (10th Cir. 2010).

72. The Safchiks do not allege property damage caused by an occurrence.

73. Moreover, the coverage set forth in the Umbrella Policy only applies to property damage that occurs during the policy period. *Exhibit 2 at SPKM-AF 000507.*

74. The Umbrella Policy expired on August 8, 2022. *Exhibit 2 at SPKM-AF 000466.*

75. The Safchiks allege damages occurring in February of 2024 – 18 months after the Umbrella Policy expired.

76. The Umbrella Policy's insuring clause does not provide any coverage for damages occurring after August 8, 2022.

77. The Umbrella Policy also contains the following exclusion for property damage:

**IV.   EXCLUSIONS**
This insurance does not apply to:
* * * * *
    **I.**    "Property damage" to:
        * * * * *
        **5.**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
        **6.**    That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
        * * * * *
Paragraph **6.** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

*Exhibit 2 at SPKM-AF 000523.*

78. The Safchiks allege damage to their home on which both MatPel and Absolute performed operations.

79. The damage to the Safchiks' home allegedly arising from MatPel and Absolute's operations is excluded from coverage by virtue of the Umbrella Policy's property damage exclusion.

80. The Umbrella Policy contains the following "your work" exclusion:

This insurance does not apply to:
* * * * *
    **b.**    Any "property damage":
        * * * * *

> **(2)** To "your work" arising out of it or any part of it and included in the "products-completed operations hazard:"
> * * * * *
> However, this exclusion does not apply to the extent that insurance for such "property damage" is provided by a policy listed in the Schedule of Underlying Insurance, and for not broader coverage than is provided by such policy;

*Exhibit 2 at SPKM-AF 000488.*

81. The Safchiks allege damage to the insulation work performed directly by Absolute.

82. The damage to Absolute's insulation work is excluded from coverage by the Umbrella Policy's damage to your work exclusion.

83. MatPel's work on the Safchiks' home included the task of ensuring that subcontractors retained by MatPel performed their work in accordance with the project's plans and in a good and workmanlike manner.

84. The Safchiks allege damage to their home arising out of MatPel's failure to properly supervise Absolute and ensure that it performed its work in accordance with the project's plans and in a good and workmanlike manner.

85. The damage to the Safchiks' home allegedly caused by MatPel's failure to properly supervise Absolute is excluded from coverage by the Umbrella Policy's damage to your work exclusion.

86. MatPel's coverage under the Umbrella Policy cannot be broader than the coverage afforded by the Liability Policy.

87. The "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement expressly excludes coverage for property damage occurring after MatPel has completed its work on the Safchiks' home.

88. Therefore, Absolute's Umbrella Policy likewise does not provide coverage for property damage occurring after MatPel has completed it work on the Safchiks' home.

89. On information and belief, the property damage alleged by the Safchiks did not occur until after MatPel had completed its work on the Safchiks' home.

## COUNT ONE:
## DECLARATORY RELIEF

90. Plaintiffs reallege each of the facts set forth in paragraphs 1 through 88 of this Complaint, and incorporates those facts as though fully set forth herein.

91. This Court has authority pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.

92. An actual controversy exists between Plaintiffs, Absolute, MatPel, and the Safchiks in this case.

93. Absolute and MatPel have both made a claim for a defense and indemnity from the claims made by the Safchiks under the terms, conditions, and exclusions of the Liability Policy and the Umbrella Policy.

94. Plaintiffs, however, do not have a duty to defend or indemnify MatPel or Absolute because the Safchiks have not made any claim for damages that MatPel or Absolute could become legally obligated to pay.

95. Plaintiffs further do not have a duty to defend or indemnify MatPel or Absolute because the Safchiks have not alleged any property damage caused by an occurrence.

96. Plaintiffs further do not have a duty to defend or indemnify MatPel or Absolute from claims of property damage occurring after the end of the policy term.

97. Plaintiffs do not have a duty to defend or indemnify MatPel or Absolute from any claims of damage to property on which either party performed work or operations.

98. Plaintiffs do not have a duty to defend or indemnify MatPel or Absolute from any claims of damage to work performed by either party.

99. OSIC do not have a duty to defend or indemnify MatPel from claims of property damage occurring after MatPel completed work on the Safchiks' home.

100. Plaintiffs are entitled to a judgment declaring that they do not have a duty to defend or indemnify MatPel or Absolute from the claims made by the Safchiks.

**WHEREFORE,** Plaintiffs pray that this Court enter its judgment in favor of Plaintiffs and against MatPel, Absolute, and the Safchiks, and that this Court declare that Plaintiffs do not have a duty to defend or indemnify MatPel or Absolute from any claims made by the Safchiks, that OSIC may withdraw from the defense of MatPel and Absolute in the lawsuit filed by the Safchiks, and for such other and further relief as is appropriate under the circumstances.

**DATED** this 31st day of December, 2025.

Andrew F. Sears, # 7-4557
Bennett L. Smith, # 8-7450
Sundahl, Powers, Kapp & Martin, LLC
500 W. 18th Street, Suite 200
P.O. Box 328
Cheyenne, WY 82003-0328
Telephone: (307) 632-6421
Facsimile: (307) 632-7216
asears@spkm.org
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

This is to certify the foregoing **Plaintiff's Complaint** was served upon the following this 31st day of December 2025 via United States mail, postage prepaid and addressed to the following:

Absolute Foam Insulation Systems, Inc.
Registered Agent: Lorna A Speth
1483 Lost Creek Rd
Thayne, WY 83127 USA

Matarozzi Pelsinger Builders Inc.
Registered Agent: C T Corporation System
2232 Dell Range Blvd Ste 200
Cheyenne, WY 82009 USA

Jeffrey Safchik
1180 W. Bar BC Ranch Road
Jackson, WY 83001

Wendy Safchik
1180 W. Bar BC Ranch Road
Jackson, WY 83001

_____
Andrew F. Sears